UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LUIS FARGAS,                                          CIVIL NO. 12-2165 (JRT/JSM)

    Plaintiff,

v.                                                    REPORT AND RECOMMENDATION

UNITED STATES OF AMERICA, et al.,

    Defendants.

The above matter came before the undersigned Magistrate Judge of the District Court upon Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 23]; Plaintiff's Motion for Waiver of Noncompliance [Docket No. 42]; and Plaintiff's Motion to Submit Exhibits on the Record [Docket No. 46]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

**I.     FACTUAL BACKGROUND**

The present action arises out of a fight between plaintiff Luis Fargas ("Fargas") and another inmate Trini Rivas ("Rivas"), which took place on March 27, 2006, at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"). Complaint ("Compl.") [Docket No. 1], p. 5.

**A.     Fargas I**

Prior to the instant suit, Fargas commenced an action in 2006 arising out of the same incident against defendants United States of America, Federal Bureau of Prisons ("BOP"), Officer Don Vavra ("Vavra"), Officer Steven Smith ("Smith"), and then Lieutenant Todd Miller ("Miller"). Fargas v. U.S., Civ. No. 06-3267 (JRT/JSM), 2008 WL

1

698487 (D. Minn. 2008) ("Fargas I"). Fargas asserted Bivens[1] claims under the Fifth and Eighth Amendments, as well as two claims under the Federal Tort Claims Act ("FTCA"). Fargas I Complaint [Civ No. 06-3267, Docket No. 1]. Fargas alleged that Vavra and Smith deliberately placed Fargas in a cell with Rivas so that Rivas would assault him. Id., ¶¶ 14, 15. Fargas further alleged that Miller and BOP staff impeded his ability to utilize the administrative remedy process and access the courts by refusing to provide him with appropriate forms and failing to deliver requests for assistance. Id., ¶¶ 16-20. Fargas also claimed that FMC-Rochester medical staff refused him treatment and withheld pain medication, furthering his injuries. Id. ¶¶ 7, 21.

Fargas I was referred to the undersigned for a Report and Recommendation. This Court recommended that Fargas' medical negligence FTCA claim be dismissed without prejudice because Fargas had failed to exhaust his administrative remedies. Fargas I, 2008 WL 698487 at *6-7. The Court concluded that while Fargas had submitted the forms prescribed by the administrative remedy process, he had failed to mention any allegations of medical malpractice, thus leaving the BOP without adequate notice of the claim. Id. As to Fargas' second FTCA claim, alleging negligence arising out of defendants' decision to place him in the cell with Rivas and waiting for backup to arrive before breaking up the fight, this Court recommended that the claim be dismissed with prejudice because the claim was barred by the discretionary-function exception to the FTCA's jurisdictional waiver. Id. at *8-10.

This Court also recommended that the Bivens claims be dismissed with prejudice, finding that Fargas had failed to exhaust administrative remedies. Id. at *10-

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

2

14. Fargas filed objections to that part of the Report and Recommendation, challenging the dismissal of his Bivens claims on two grounds: (1) this Magistrate Judge could not decide summary judgment motions; and (2) his Bivens claims should not have been dismissed with prejudice on exhaustion grounds. Id. After *de novo* review of the objections, District Judge John R. Tunheim overruled the objections and adopted the Report and Recommendation. Id. Fargas appealed the decision to the Eighth Circuit challenging only his failure to exhaust his Bivens claims. Fargas v. U.S., 334 Fed. Appx. 40 (8th Cir. 2009) (per curiam). The appellate court determined that Fargas had failed to exhaust his administrative remedies by not attempting informal resolution and affirmed the lower court's decision, but modified the dismissal to be without prejudice. Id. (citing Jones v. Douglas County Corr. Ctr., 306 Fed. Appx. 339, 340 (8th Cir. 2009) (per curiam)).

### B. Fargas' Complaint and Affidavits

In the present action, Fargas alleged that on March 27, 2006, while housed in a segregated housing unit ("SHU") at FMC-Rochester, he was ordered to relocate to a cell to be shared by Rivas. Compl., p. 5. According to Fargas, Rivas was HIV positive and a known member of a gang called the Border Brothers. Id.; see also Plaintiff's Opposition to Defendant's Motion for Summary Judgment/Motion to Dismiss, Cross Motion for Summary Judgment/And A Motion for Oral Hearing/Trial ("Pl's. Mem.") [Docket No. 41], p. 3. Fargas was a member of a rival gang called the Latin Kings. Pl's. Mem., p. 2. Two correctional officers, Vavra and Smith, escorted Fargas to the cell. Compl., p. 5. According to Fargas, he warned Vavra and Smith of his and Rivas' respective gang affiliations and objected to being placed in the cell. Id. Once in the

cell, Rivas began shouting at Vavra, Smith and Fargas, threatening that he would attack Fargas if Fargas were left in the cell. Id. Fargas and Rivas assumed fighting stances, and in response, Vavra and Smith ordered both Fargas and Rivas to approach the door of the cell to be handcuffed. Id. Fargas was handcuffed first. Id. Before Rivas could be handcuffed, Rivas assaulted Fargas until Fargas fell to the floor where Rivas continued to kick him until he lost consciousness. Id. At that point, Vavra and Smith intervened and escorted Fargas to the shower and medical areas. Id. According to Fargas, he suffered "multiple abrasions, contusions, scratches, bruises and a damaged right wrist." Id.

Based on these allegations, Fargas claimed that, knowing of the prisoners' respective gang affiliations, Vavra and Smith placed Fargas in the cell with Rivas in order that the assault would occur. Id., pp. 5-6. Fargas further alleged that once the assault began, Vavra and Smith waited an excessive period of time before intervening. Id., p. 6. Fargas asserted that Vavra and Smith's actions constituted cruel and unusual punishment in violation of the Eighth Amendment. Id., p. 7. Fargas also averred that Vavra and Smith discriminated against him in violation of the equal protection clause of the Fourteenth Amendment. Id. Fargas claimed that after the assault, FMC medical staff refused to provide proper medical treatment, causing further physical and emotional pain. Id., p. 5. According to Fargas, Anderson, in his position as Warden at FMC-Rochester, was legally responsible for the conduct of Vavra, Smith, and the FMC medical staff. Id., p. 6.

Fargas alleged that Miller, as well as other unknown BOP staff members, deliberately prevented him from utilizing the administrative remedy process, in violation

4

of the due process and equal protection clauses of the Fourteenth Amendment. Id., pp. 6-7. Fargas further alleged that Miller ordered Fargas to shower before receiving medical treatment in order to cover up the assault. Id., p. 7. According to Fargas, Miller also violated prison policy by housing rival gang members in the same cell as well as housing an HIV-infected prisoner with an uninfected prisoner. Id. Fargas asserted that this policy violation constituted cruel and unusual punishment under the Eighth Amendment and violated the equal protection clause of the Fourteenth Amendment. Id. Fargas additionally claimed that by charging him with fighting, Miller violated the Eighth Amendment. Id. Fargas also claimed that Miller ordered Fargas' mail to be transferred and seized in violation of the Fourth Amendment. Id.

In an affidavit attached to the Complaint, Fargas requested that "his action be reinstated."[2] Compl., p. 9, ¶ 11.

### C. Defendants' Motion to Dismiss or for Summary Judgment

On February 1, 2013, defendants moved to dismiss. Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 23]. Defendants characterized Fargas' Complaint as consisting of First and Eighth Amendment Bivens claims and a common law torts claim brought under the FTCA. See Defendants' Memorandum in Support of Motion to Dismiss or for Summary Judgment ("Defs. Mem.") [Docket No. 24]. With regard to his FTCA claim, defendants argued that it was barred by both the doctrine of res judicata and the applicable statute of limitations. Id., pp. 12-16. According to

---

[2] The Court assumes that Fargas is referring to Fargas I. Fargas referred to himself as an "appellant" numerous times throughout the affidavit and argued that his action should be re-opened. Compl. p. 10, ¶ 8. In a letter sent to Chief Judge Michael J. Davis, Fargas stated that he did not know whether he should commence a new action or "refile." Plaintiff's Exhibit 1 [Docket No. 1], p. 3.

defendants, because Fargas' FTCA claim was dismissed for lack of subject matter jurisdiction in Fargas I, Fargas could not litigate the claim in the present action. Id., pp. 12-13. Defendants also asserted that the relevant statute of limitations for FTCA actions allowed Fargas only six months to commence the present action from the date the BOP denied his administrative claim. Id., p. 14. Because the BOP denied Fargas' claim on May 31, 2006, and he filed the present action on August 29, 2012, defendants contended that the claim was barred. Id., pp. 14-16.

Defendants argued that Fargas' First Amendment Bivens claim was barred by the principles of res judicata or issue preclusion.[3] Id., pp. 13-14. Defendants submitted

---

[3] In their memorandum, defendants use the terms "issue preclusion" and "res judicata" interchangeably, but in reality, these phrases refer to different doctrines. "'Res judicata' is the term traditionally used to describe two discrete effects: 1) what we now call claim preclusion, which is a valid final adjudication of a claim precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel,' which traditionally occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim.'" Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003) (quoting Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998)).

A party asserting that a claim is barred by res judicata (claim preclusion) must show: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted). "Under res judicata 'a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.'" Yankton Sioux Tribe v. U.S. Dept. of Health and Human Services, 533 F.3d 634, 639 (8th Cir. 2008) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)) (emphasis added). Thus, "'[a] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim.'" Banks v. International Union Electronic, Elec., Technical, Salaried and Machine Workers, 390 F.3d 1049, 1052 (8th Cir. 2004) (quoting Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990)); see also Costner, 153 F.3d at 673 (stating that "[r]egarding the 'same claims or causes of action' element of claim preclusion, we have stated that whether a second lawsuit is precluded turns on whether its claims arise out of the 'same nucleus of operative facts as the prior claim') (citations omitted).

6

that in <u>Fargas I</u>, Fargas brought a First Amendment <u>Bivens</u> claim, alleging that BOP staff interfered with his attempts to exhaust the administrative remedy procedure. <u>Id.</u> According to defendants, this was "the seminal issue in the prior case," which Fargas had a full and fair opportunity to litigate. <u>Id.</u> Thus, defendants claimed that Fargas was barred from litigating the issue in the present action. <u>Id.</u>

Defendants further maintained that Fargas' First Amendment and Eighth Amendment <u>Bivens</u> claims were time-barred. <u>Id.</u>, p. 16. According to defendants, Fargas' claims accrued on March 27, 2006, after he was assaulted by Rivas. <u>Id.</u> If a six-year statute of limitations applied, Fargas had until March 27, 2012, to file the <u>Bivens</u> claims, and he did not file his suit until August 29, 2012. <u>Id.</u>

Finally, defendants asserted that they were entitled to qualified immunity on all of Fargas' claims. <u>Id.</u>, pp. 17-31. Defendants argued that Miller was uninvolved in Fargas' cell transfer, and that even if Miller ordered the transfer in violation of prison policy, such a policy violation would not constitute a constitutional violation. <u>Id.</u> pp. 20-21. Defendants further argued that Rivas did not pose an objective risk of harm to Fargas at the time Fargas was transferred to the cell, and that Vavra and Smith were not deliberately indifferent to the risk, as they responded reasonably to the situation as it escalated. <u>Id.</u>, pp. 21-29. Defendants also claimed that they were uninvolved in the

---

In order for order for collateral estoppel (issue preclusion) to bar litigation of an issue, (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been litigated in the prior action; (3) the issue must have been determined by a valid and final judgment; (4) the determination must have been essential to the prior judgment; and (5) the estopped party must be a party or in privity with a party to the prior litigation. <u>See</u> <u>Mille Lacs Band of Chippewa Indians v. State of Minn.</u>, 124 F.3d 904, 922 (8th Cir. 1997) (citations omitted).

treatment of Fargas' injuries resulting from the assault, and in the alternative, that disagreement over the proper standard of medical care does not rise to the level of deliberate indifference. Id., pp. 29-30.

### D. Fargas' Response

In response to defendants' motion, Fargas reasserted that Vavra and Smith intentionally put him in a cell with Rivas so that Rivas would assault him. See Pl's. Mem., p. 2. Fargas claimed that this was done in retaliation for threats Fargas had previously made to prison staff. Id. Fargas reiterated that his placement in a cell with Rivas was a violation of prison policy and contended that inmates could not be moved without Miller's permission. Id., p. 3. Fargas also argued that under a civil jurisdiction, the principles of res judicata and collateral estoppel are narrower in scope than those found in common law jurisdictions, and that accordingly his claims were not barred. Id. pp. 4-5. Fargas further contended that he did not know about the relevant statute of limitations and that as such, his suit should not be time-barred. Id., p. 4. Lastly, Fargas asserted that Miller had informed him he would be transferred to a prison camp, and that Miller contacted other prisons requesting that they take away Fargas' legal papers. Id., p. 6.

### E. Defendants' Reply

In reply, defendants argued that the United States is a common law jurisdiction, and that civil law jurisdiction principles of res judicata do not apply. Reply of Defendants [Docket No. 45], p. 2. Defendants further asserted that Fargas had adequate notice of the statute of limitations since it is codified and the BOP informed him of the deadline in

a letter dated May 31, 2006.  Id., p. 3.  Defendants concluded by reiterating that they are entitled to qualified immunity.  Id., pp. 3-5. [4]

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  In considering a motion to dismiss under Rule 12(b)(6), however, the Court must "view all the facts pleaded by the . . . nonmovants, as true, and make all reasonable inferences in the [nonmoving party's] favor."  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 663 (8th Cir. 2009).

### B. Rule 56 Motion for Summary Judgment

To succeed on a motion for summary judgment, the movant must "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Supreme Court has clarified that "only disputes over facts that might affect the outcome of the suit under the

---

[4] On June 28, 2013, Fargas filed Plaintiff's Motion to Submit Exhibits on the Record [Docket No. 46].  The exhibits associated with the motion largely consisted of portions of the defendants' affidavits and documents submitted by the defendants pertaining to the administrative remedy process.  Plaintiff's Exs. 1-9 [Docket No. 47].  Fargas also included medical records allegedly demonstrating the injuries he received as a result of Rivas' assault.  Id.  This motion was untimely.  Pursuant to an order issued by the Court, Fargas had until May 24, 2013 to file a response to Defendants' Motion to Dismiss or for Summary Judgment.  Order [Docket No. 40], ¶1.  Fargas was not to file any additional motions until a ruling had been issued on defendants' motion.  Id., ¶9.  Nevertheless, in its discretion, the Court has read and considered Fargas' motion and the accompanying exhibits.

governing law will properly preclude summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must grant an order for summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. ANALYSIS

In his Complaint, Fargas alleged that his placement in a cell with Rivas constituted cruel and unusual punishment, and then at various points, characterized this conduct as a violation of the Fourteenth Amendment. As defendants argued, however, the Court finds that those claims are best characterized as Eighth Amendment Bivens claims. The Fourteenth Amendment prohibits states from depriving a person of life, liberty and property without due process of law. The Supreme Court has incorporated many of the rights enumerated in the Bill of Rights into the due process clause. See Robinson v. California, 370 U.S. 660, 667 (incorporating the Eighth Amendment prohibition of cruel and unusual punishment into the due process clause of the Fourteenth Amendment). Additionally, because state law is not implicated by Fargas' claims, the Court finds that the due process violations are better characterized as falling within the Eighth Amendment. See Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989) (distinguishing pre-trial detainees from convicted prisoners insofar as pre-trial detainee's confine conditions are analyzed under the due process clause of the Fifth Amendment, while the confinement conditions of convicted prisoners are analyzed under the Eighth Amendment). The Court will subsequently refer to Fargas' Bivens

claim relating to his placement in the cell with Rivas and treatment thereafter, as the "Eighth Amendment claim."

Similarly, while Fargas described BOP staff's alleged interference with his attempt to contact the courts as a violation of the Fourteenth Amendment, the Court finds that it is more properly characterized as violation of the First Amendment right to access the courts. The Court will subsequently refer to this claim as the "First Amendment claim."[5]

Bivens actions are governed by the same statute of limitations as § 1983 actions. Sanchez v. U.S., 49 F.3d 1329, 1330 (8th Cir. 1995). Section 1983 does not have its own statute of limitations, but rather adopts the applicable state-law statute of limitations. Hester v. Redwood County, 885 F. Supp. 2d 934, 944 (D. Minn. 2012). The Minnesota state statute of limitations for general torts claims is six years; however, intentional torts are governed by a two-year statute of limitations. Id. With regard to Bivens claims, courts in this District have reached inconsistent determinations on the issue of whether the six-year or two-year statute of limitations applies. Id. (citing six cases in the jurisdiction reaching different conclusions). Defendants argued that whether this Court applied a two-year or six-year statute of limitations, Fargas' claims are barred since the claim accrued on March 27, 2006, when Fargas was assaulted, and he did not commence the instant action until August 29, 2012. See Defs. Mem., p. 16.

---

[5] Contrary to defendants' assertions, the Court does not find that Fargas brought an FTCA claim in the present action. At no point in Fargas' Complaint or his opposition memorandum did he mention the FTCA or allege any common law torts. Furthermore, as Fargas' FTCA claims arising out of defendants' decision to place him in the cell with Rivas and waiting for backup to arrive before breaking up the fight were dismissed with prejudice in Fargas I, the Court is puzzled by defendants' lengthy FTCA discussion.

11

The statute of limitations begins to run from the time an action can be commenced. Leisure Dynamics, Inc. v. Falstaff Brewing Co., 298 N.W. 2d 33, 37 (Minn. 1980). Because Fargas alleged that it is cruel and unusual punishment to force inmates with rival gang affiliations to share a cell, his Eighth Amendment claim accrued on March 27, 2006, when Smith and Vavra relocated him to a cell occupied by Rivas. Compl., p. 6. Under a six-year statute of limitations, the last day Fargas could have commenced suit was March 26, 2012. The present action was commenced on August 8, 2012. Thus, Fargas' Eighth Amendment Bivens claim is time-barred regardless of the application of a two-year or six-year statute of limitations, and defendants are entitled to summary judgment on this claim.

Defendants also argued that Fargas' First Amendment Bivens claim is time-barred. In order to bring a claim for violation of the right of access to the courts, a plaintiff must demonstrate "actual injury." White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007). Fargas could not have brought his First Amendment Bivens claim immediately after his assault, because he had not yet suffered any injury resulting from the defendants' interference with his ability to utilize the administrative remedy process. Consequently, his action could not have accrued on March 27, 2006, as defendants argued. However, while Fargas did not state in his Complaint when defendants allegedly began to impede his right to access the courts or when he suffered an actual injury as a result, it is evident from Fargas I that Fargas ceased attempting to utilize the administrative remedy process on May 8, 2006. See Fargas I, 2008 WL 698487 at *4, 13. As such, his First Amendment Bivens claim accrued no later than May 8, 2006, and

is time-barred regardless of whether the six-year or two-year statute of limitations applies.[6]

Fargas' lack of knowledge of the statute of limitations is insufficient to overcome his failure to timely pursue his claims. See Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990) (finding that "federal courts have typically extended equitable relief only sparingly"); See also Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984) (finding that "one who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence"); Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted.") (citing Preston v. Iowa, 221 F.3d 1343 (8th Cir. 2000) (per curiam)). Accordingly, the Court finds no basis to toll the statute of limitations, and defendants are entitled to summary judgment on Fargas' First Amendment Bivens claim.[7]

---

[6] As discussed, the Court focuses on Fargas' First and Eighth Amendment Bivens claims, concluding, that Fargas attempted to bring suit on these bases. However, the Court notes that any other Bivens claims Fargas may have attempted to bring are similarly time-barred. This is because Fargas was transferred from FMC-Rochester on May 24, 2006, (see Declaration of Dennis Bitz [Docket No. 30], ¶7), and at this point in time, Fargas' relationship with defendants ended, and all potential Bivens claims involving these parties had accrued.

[7] Having concluded that Fargas' claims are time-barred, it is not necessary for this Court to address defendants' contention that his First Amendment claim is barred based on the preclusion doctrines of res judicata or collateral estoppel. However, the Court does observe that defendants mischaracterized the issues addressed by the parties and decided by the courts in Fargas I. In support of their contention, defendants asserted that Fargas had "claimed [in Fargas I] that Defendants had interfered with his ability to exhaust by denying his access to relevant forms and defendants denied the allegations. The Court resolved the dispute finding that there was no interference that affected Plaintiff's ability to exhaust those remedies." Defs. Mem., p. 13. While it is true that Fargas alleged in his Complaint that the "BOP obstructed and impeded his ability to access the BOP administrative remedy process and the courts," (Fargas I, 2008 WL

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 23] be **GRANTED**;

2. Plaintiff Fargas' Complaint be **DISMISSED** with prejudice.

3. Plaintiff's Motion for Waiver of Noncompliance [Docket No. 42] be **GRANTED** insofar as the Court considered the merits of Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or for Summary Judgment [Docket No. 41].

4. Plaintiff's Motion to Submit Exhibits on the Record [Docket No. 46] be **GRANTED.**

Dated: July 22, 2013

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

698487 at *5 (citing Fargas I Complaint, V(¶20)); see also Fargas I Complaint, ¶¶16-19), that allegation played no role in either the Report and Recommendation or Judge Tunheim's Order. Fargas I, 2008 WL 698487 at *14 (dismissing Fargas' Bivens Fifth and Eighth Amendment claims on the basis that he did not file the BP-8 necessary to attempt informal resolution in the first place and that he failed to appeal Anderson's decision). Indeed, Fargas never responded to defendants' argument in Fargas I that he had failed to exhaust his administrative remedies with respect to his constitutional claims. Id., at *5. Furthermore, the Eighth Circuit modified the dismissal of the Bivens claims with prejudice to a dismissal without prejudice, allowing Fargas to litigate these claims in a future action. Fargas I, 334 Fed. Appx. at 40. In short, as there was no final judgment on the merits of the Bivens claims, the Court cannot agree that Fargas' First Amendment Bivens claim is barred by the principles of res judicata or collateral estoppel.

14

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 5, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.